**Frederick F. GROVER and Nova Myrtle Grover, Appellants (Petitioners Below),**

v.

**Thomas L. FRANTZ, Joy L. Brown, William M. Thomas, Joe M. Jacobs, as members of the Wells County Drainage Board, Appellees (Respondents Below).**

**No. 2–1079A316.**

Court of Appeals of Indiana, Fourth District.

Aug. 11, 1980.

Court, which entered summary judgment in favor of the appellees, members of the Wells County Drainage Board (hereinafter collectively referred to as "the Board"). On appeal Grovers attack the lower court's decision, arguing that material issues of fact remained for trial.[1] We hold summary judgment was improperly granted in this case.

Reversed and remanded.

This controversy arises out of proceedings initiated by the Wells County Drainage Board for the reconstruction of a legal drain. Ind.Code 19–4–3–1 through 19–4–3–5. The drain, known as the "Stites Drain," runs through land owned by appellants Frederick and Nova Grover.

On April 12, 1976, the Board referred the Stites Drain to the county surveyor for a reconstruction report. After the report was completed and filed, the Board issued a schedule of assessments for the project. As required by Ind.Code 19–4–3–2(1), this schedule contained a description of each tract of land to be benefited by reconstruction of the drain and listed the percentage of the total cost of the improvements to be assessed against each tract of land, the percentage based upon the benefit to the land resulting from the improvement.

Following hearings on the reconstruction report and schedule of assessments, appellants filed a petition for judicial review claiming the Board failed to find their land would be damaged as a result of the reconstruction project.[2] The Board responded by filing a motion for summary judgment, which was granted. This appeal follows.

Ind.Code 19–4–3–2 requires that in addition to considering the benefits associated with the reconstruction of a drain, the Board must consider any damage sustained by a landowner as a result of the improvement. IC 19–4–3–2 provides:

"Whenever the surveyor has filed his reconstruction report he shall consult with the board and the board shall:

.    .    .    .    .

Michael E. Boonstra, Boonstra, Chovanec & Truitt, Markle, for appellants.

S. Daniel Weldy, III, Gallivan, Hamilton, Hamilton, Seese & Patterson, Bluffton, for appellees.

CHIPMAN, Judge.

Appellants Frederick and Nova Grover appeal from a decision of the Grant Circuit

1. Appellants raise a number of other issues which, because of our disposition of the case, we find unnecessary to review.

2. The cause was subsequently venued to Grant Circuit Court.

(2) determine the amount of damages sustained by any owner as a result of the improvement, and *shall prepare a schedule of damages* containing the name and address of each owner determined to be damaged and a description of the owner's land as shown by the surveyor's report, the amount of each owner's damages, *and an explanation of the injury upon which the determination was based.* The surveyor shall in his report add the damages to all lands as determined by the board to his estimated costs and expenses of the improvement and the result shall constitute the total estimated cost of the improvement;" (emphasis added)

An affected landowner who feels the damages assessed to his land are inadequate may file written objections with the Board which will be considered at a subsequent hearing. If the owner remains dissatisfied with the Board's damage assessment, Ind. Code 19–4–8–5 provides for judicial review of the agency's determination:

"Whenever a petition for judicial review is filed on the ground . . . (2) that petitioner's lands would be damaged by a proposed improvement and the board failed to so find, or that the board found petitioner's lands would be damaged but the amount of damages awarded were inadequate, then the court shall proceed to hear the issue of . . . damages de novo, . . . ."[3]

In their petition for judicial review appellants claimed the Board failed to find their land would be damaged by reconstruction of the drain. The record discloses that the Board *never* prepared a schedule of damages as required by IC 19–4–3–2(2). The Board's position on this issue is somewhat befuddled. In a response to the Grovers' interrogatories the Board stated the im-

provement would not result in any damage to the Grovers' land. However, in its appellate brief the Board argues that while the Grovers' property was damaged by reconstruction of the Stites Drain, those damages were considered in calculating the net benefit to the land and in arriving at the corresponding assessment against the property.[4] Notwithstanding this apparent inconsistency, the fact remains that Grovers were entitled to a trial *de novo* on the issue of damages.

In his affidavit in response to the Board's motion for summary judgment, Frederick Grover alleged that as a result of the reconstruction of the Stites Drain his land has been damaged as follows:

"[O]ver one-and-one-half (1½) acres of . . . valuable real estate have disappeared due to the widening of the ditch, numerous field-tile drainage outlets into the ditch have been damaged and incorrectly re-installed, fences have been recklessly and carelessly destroyed, the debris from the ditch reconstruction has been piled on Petitioner's lands rendering such lands incapable of producing a normal crop for a period in excess of twenty-five (25) years if left in its present state, and . . . sizeable portions of the remainder of Petitioners' lands, outside the seventy-five (75) foot easement, now drain less efficiently than they did prior to the reconstruction;"

The easement to which Grover refers in his affidavit is in fact a right of entry recognized by Ind.Code 19–4–6–1:

"The surveyor, or the board, or any duly authorized representative of either the surveyor or the board, in the performance of any duty required or permitted under the provisions of this act, shall have the

---

**3.** Ind.Code 19–4–8–5(a) provides that in a proceeding for judicial review, "a change of venue may be taken from the judge and from the county, and a jury trial obtained, pursuant to the law governing the trial of civil actions."

IC 19–4–8–5(b) states that where the petition for judicial review is filed on any ground other than inadequate damages or excessive benefits, the decision of the drainage board must be

affirmed unless the decision was "arbitrary, capricious, unlawful, or not supported by substantial evidence, . . . ."

**4.** This, of course, ignores the requirement found in IC 19–4–3–2(2) that the Board "shall" make a "schedule of damages" which includes the amount of each owner's damage and an "explanation of the injury upon which the determination . . . [is] based."

right of entry over and upon lands lying within seventy-five [75] feet of any legal drain, the seventy-five [75] feet to be measured at right angles to the center line of any legal tile ditch, and to be measured at right angles from the existing top edge of each bank of a legal open ditch as determined by the surveyor." Because all reconstruction work on the drain was completed within this seventy-five foot right of way,[5] the trial court held the damages alleged by the Grovers were not recoverable under the Indiana Drainage Code. Specifically, the lower court found:

"5. That Indiana Code Edition 19–4–6–1 states, in pertinent part, that any crops grown on said seventy-five (75) foot right-of-way are at the risk of the landowner, and if necessary in the reconstruction or maintenance of said ditch, may be damaged or destroyed without liability on the part of the Surveyor, the Wells County Drainage Board or their representatives.

6. That the entire ditch reconstruction project, as it affected the land of Petitioners, was completed within the seventy-five (75) foot easement referred to in Indiana Code Edition 19–4–6–1.

7. That there exists no issues in this case relating to a material fact which should be tried, either by the Court or by a jury, for the reason that the Respondents have completed their work on Petitioners' land within the statutorily granted right-of-way."

We believe the trial court's interpretation of IC 19–4–6–1, i. e., that any damage to land located within the Board's seventy-five foot right-of-way may not be considered by the court, was erroneous.

■ First, we acknowledge that IC 19–4–6–1 does impose certain restrictions on the use of land located within the Board's right-of-way. Generally, the land may be used "in any manner not inconsistent with the proper operation of the drain . . . ." *Id.* Permanent structures, however, may not be erected on the right-of-way without

written consent of the Board. Temporary structures may be placed on the right-of-way without the Board's permission, but must be removed if so ordered. Woody vegetation may not be planted except with the written consent of the Board. *Id.* Special provision is made for crops:

"Crops grown on a right-of-way are at the risk of the landowner, and if necessary in the reconstruction or maintenance of the drain may be damaged or destroyed without liability on the part of the surveyor, the board, or their representatives."

*Id.*

The Indiana Drainage Code defines "damages" quite broadly as "disadvantages to land and owner . . . resulting from the construction, reconstruction, vacation or maintenance of a legal drain pursuant to the provisions of this act." Ind.Code 19–4–1–2(7)

Grovers claim portions of their property which lie outside the Board's right-of-way now drain less efficiently as a result of the reconstruction. This alleged damage obviously has nothing to do with the Board's right of access to the legal drain, and is certainly damage to an owner's land which should be assessed by the Board, and by the trial court in a trial *de novo.* Whether part of the Grovers' land actually drains less efficiently as a result of the improvement was an unresolved question of fact; for this reason alone, summary judgment should not have been granted.

Grovers also claim debris from the drain's excavation has been placed upon a portion of their farmland rendering it incapable of crop production. IC 19–4–6–1 makes only one reference to spoil bank spreading:

"Spoil bank spreading resulting from an improvement to a legal open ditch may extend beyond said seventy-five [75] foot right-of-way if in the opinion of the surveyor the same is necessary . . . ."

This portion of the statute simply authorizes the Board to expand its reconstruction

---

5. Appellees submitted numerous affidavits in support of their motion for summary judgment, each stating that the reconstruction work was completed within the 75 foot right-of-way.

activities beyond the normal seventy-five feet on either side of the ditch. The provision does not say that damage to cropland resulting from spoil bank spreading within the Board's right-of-way should not be assessed as damage to an owner's property in arriving at the total cost of the improvement under IC 19–4–3–2. Likewise, the Grovers claim an acre and a half of real estate were lost when the drain was widened during reconstruction. This loss of land should also be considered as damage to an owner's property in arriving at the total cost of the project. The issues of soil damage and actual loss of land therefore remained as unresolved questions of material fact.

■ More troublesome are the Grovers' claims concerning the alleged "reckless and careless" destruction of fences and the damage to and improper reinstallation of field tile outlets. The problem lies in the fact that these claims sound in tort, appearing to be, at least in part, claims alleging negligent damage to the Grovers' property. The issue is further complicated by the fact that we are not told whether the fences destroyed were approved permanent structures within the seventy-five foot right-of-way.

In *Vanderburgh County Drainage Board v. Clouse,* (1979) Ind.App., 398 N.E.2d 701, the First District held a landowner could recover for damage to even an unauthorized structure where the damage resulted from the negligence of the Board or its agent. *Vanderburgh,* however, involved an independent tort action, not a petition for judicial review. Assuming Grovers are claiming the Board or its agent negligently damaged their property, the question which follows is whether this negligence claim is properly before the trial court upon the filing of a petition for judicial review pursuant to IC 19–4–8–5. We believe it is not.

Our Supreme Court has acknowledged that a proceeding for the reconstruction or repair of a public drain is a creature of statute, the nature of which is limited to the express provisions of the drainage code. *Amstutz v. Huser,* (1964) 245 Ind. 111, 196 N.E.2d 409; *Widmer v. Sweeney,* (1955) 234 Ind. 263, 124 N.E.2d 385; *Pullin v. Arnold,* (1954) 234 Ind. 13, 122 N.E.2d 858. In the present case, *de novo* judicial review is provided for the purpose of determining those damages to an owner's property which must necessarily result from reconstruction of the legal drain. These damages are added to the other costs of the improvement in arriving at the "total estimated cost of the improvement." IC 19–4–3–2(2). The total estimated cost is then assessed against the property of affected landowners within the watershed. However, we hardly think our legislature intended that *negligent* damage to an individual's property should be added to the cost of the improvement ultimately assessed to other landowners. Surely these landowners are not required to insure or subsidize the work of a careless or reckless private contractor. This is not to say that a landowner may not recover for the negligent injury to his property caused by the Board or its agent. He may, in a separate and independent action, maintain a suit for damages resulting from negligence or from an unauthorized and substantial departure from the reconstruction plan established during the drainage proceedings. However, we believe that upon the filing of a petition for judicial review, our legislature clearly intended the scope of the proceeding to be limited to a determination of those damages *necessarily* resulting from the reconstruction project.

Accordingly, we find there were issues of material fact which precluded the granting of the Board's motion for summary judgment. The decision of the trial court is reversed, and this cause is remanded for a determination of those damages to the Grovers' land necessarily resulting from the reconstruction project.

MILLER, J., concurs.

YOUNG, P. J., dissents with opinion.

YOUNG, Judge, dissenting.

I dissent.

The evidence before the trial court presented by affidavits established without

dispute that the reconstruction of the Stites Open Ditch was accomplished within the 75' right of way of the Wells County Drainage Board established by the terms of Ind.Code 19–4–6–1. I disagree that IC 19–4–3–2(2) is mandatory in its terms requiring the drainage board to make an express finding of damages or no damages. The purpose of determining damages is to be able to disclose the amounts involved as a part of the overall cost of the project which is borne by the owners within the watershed. Only when it has been determined that damage will occur is it necessary to make such a schedule.